# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CURTIS BAIR, et al.,** : | |
| : | |
| **Plaintiffs** : | |
| : | CIVIL ACTION NO. 1:04-CV-1357 |
| v. : | |
| : | (Chief Judge Kane) |
| **FRANCIS PURCELL, et al.,** : | |
| : | |
| **Defendants** : | |

## MEMORANDUM

Before the Court are motions in limine filed by Plaintiffs (Doc. No. 97) and Defendants (Doc. Nos. 98-100) seeking the exclusion of certain types of evidence. The motions have been briefed and are ripe for adjudication. Additionally, on November 29, 2007, the Court held oral argument on the motions.

Because the parties are familiar with the background of this case, which is also set forth in the Court's opinion dated August 2, 2007 (Doc. No. 87), the Court will omit a lengthy recitation of the factual background and procedural history of this litigation, which arises generally from the deterioration of the business relationship between Plaintiffs and Defendants. The claims remaining for trial are: (1) a breach of contract claim against Francis Purcell and/or Appalachian Baking Company (the "company") for their alleged breach of a stock buy-out agreement; (2) a breach of contract claim against the company for its alleged breach of long-term employment agreements with the Bairs; (3) Curtis Bair's breach of fiduciary duty/shareholder oppression claim against the Purcells; (4) Curtis Bair's claim, in the alternative, against Norma Purcell for aiding and abetting her husband's breach of his fiduciary duties; and (5) Patrice Bair's claim that the company, Francis and Norma Purcell, and Jessica Kiely, violated Pennsylvania's Wage Payment and Collection Law. Additionally, Plaintiffs have requested that

the Court pierce the corporate veil to hold Francis Purcell individually liable for certain acts of the company, such as the breach of employment contract claim in count two of the amended complaint.

I.      **PLAINTIFFS' MOTION IN LIMINE (Doc. No. 97)**

      A.      **Defendants' proffered valuation by James Smeltzer, C.P.A.**

Plaintiffs challenge Smeltzer's testimony on the basis that it is unreliable, irrelevant, and incapable of assisting the trier of fact. Plaintiffs raise three grounds upon which they contend exclusion is appropriate. First, Plaintiffs complain that Smeltzer inappropriately "perceived" the stock held by Ms. Green and the Jameses to be analogous preferred stock, whereby these individuals "received a preferred return on their investment." Second, Plaintiffs assert that Smeltzer improperly used fair market value, rather than fair value, in his analysis. Third, they argue that Smeltzer's valuation date – December 31, 2004 – should have been either July 2002, when Purcell and/or the company allegedly breached the stock buy-out agreement, or December 2003, when Curtis Bair was removed from his positions as an officer and director of the company. The Court will address these arguments, and Defendants' responses thereto, in turn.

           *1.      Analogy to preferred stock*

Plaintiffs' first and primary argument for exclusion of Smelter's expert testimony is that he improperly discounted the stock redemptions by Ms. Green and the Jameses as a reference for estimating the value of the corporate stock, and that he did so because he considered their stock to be "analogous to preferred stock, whereby these investors received a preferred investment." Plaintiffs maintain that treating the stock of the other minority shareholders as "preferred" is impermissible under state law, and that the injection of "preferred stock" into the trial will be

misleading and confusing. Defendants' response to this argument is simply to reiterate why Ms. Green and the Jameses were offered the redemption rate that they were and to defer to the expert's judgment that the situation is one that can be analogized to that of preferred stock. Defendants also emphasize that they are not contending, nor have they ever contended, that the company offered preferred stock to any shareholder.

Here, Smeltzer was given the task of determining the fair market value of the outstanding shares of company stock. In making his valuation, he determined that the redemption of the shares held by Ms. Green and the Jameses were not appropriate indicators of the fair market value of the company's stock. Smeltzer will have an opportunity to explain why, in his opinion, these transactions were not accurate indicators of the stock's value and why this opinion comports with the standards of business valuation.

To the extent that this testimony is presented to the jury, and in order to dispel any confusion as to whether preferred stock was – or could be – offered by the company, the Court believes a limiting instruction may be appropriate and invites Plaintiffs to propose such an instruction, should they so desire. However, at this time, the Court does not believe Smeltzer's testimony should be excluded based solely on an analogy contained in his report.

### 2. *Fair market value v. fair value*

Plaintiffs complain that Defendants' expert "relies upon a faulty utilization of 'fair market value' as a standard of value for the Company's stock," rather than its "fair value." (Doc. No. 101, at 6-7) (Smeltzer's firm was "engaged to prepare an estimate of the fair market value for the outstanding common stock of Appalachian Baking Company, Inc., as of December 31, 2004."); see also 15 Pa. Cons. Stat. § 1572 (defining fair value in the context of dissenters' rights

as: "The fair value of shares immediately before effectuation of the corporate action to which the dissenter objects, taking into account all relevant factors, but excluding any appreciation or depreciation in anticipation of the corporate action."). According to Plaintiffs, Smeltzer's utilization of the fair market value standard is contrary to state law. This argument, however, fails to acknowledge that a determination of "fair value" under Pennsylvania law is informed by the consideration of "all relevant factors," and that courts have traditionally considered market value as a relevant factor. 15 Pa. Cons. Stat. § 1572; In re Glosser Bros., Inc., 555 A.2d 129, 132-35 (Pa. Super. Ct. 1989) (discussing at length the relevance of market value in stock valuations);[1] see also 12B Fletchers Cylopedia of Corporations § 5906.120 ("No one factor governs the valuation of the shares; rather, all factors, such as market value, asset value, future earning prospects, etc., should be considered."). Plaintiffs may argue that the factfinder should accord minimal weight to Smeltzer's fair market value calculation in light of other circumstances

---

[1] In Glosser Brothers, the Pennsylvania Superior Court explained:

> The basic concept of value under the appraisal is that the stockholder is entitled to be paid for that which has been taken from him, viz., his proportionate interest in a going concern. By value of the stockholder's proportionate interest in the corporate enterprise is meant the true or intrinsic value of his stock which has been taken by the [corporate action]. In determining what figure represents this true or intrinsic value, the appraiser and the courts must take into consideration all factors and elements which might reasonably enter into the fixing of value. Thus, market value, asset value, dividends, earning prospects, the nature of the enterprise, and any other facts which were known or which could be ascertained as of the date of the [corporate action] and which could throw any light on future prospects . . . are . . . pertinent to any inquiry as to the value of the dissenting stockholder's interest.

Glosser Bros., 555 A.2d at 133 (quoting Tri-Continental Corp. v. Battye, 74 A.2d 71, 76 (Del. 1950)).

and relevant factors, but they have not articulated a basis for excluding Smeltzer's testimony simply because the stated purpose of his report was to determine the fair market value for the outstanding common stock of the company.

### 3.     *Valuation date*

Plaintiffs' final argument with respect to Smeltzer's valuation is that he calculated the fair market value of the outstanding common stock of the company as of the year ended December 31, 2004, "an entire year after Plaintiff Curtis Bair was squeezed off the Board of Directors and out of his position as Secretary at the December 12, 2003 Combined Special Meeting."[2]  (Doc. No. 101, at 8.)  Plaintiffs assert that the "passage of time alone" renders the valuation unreliable and irrelevant.  (Id.)  Having considered this argument and the circumstances of the case, the Court is not persuaded that exclusion of Smeltzer's testimony is appropriate.[3]

---

[2]  Additionally, Plaintiffs argue that the expert's valuation should have focused on July 20, 2002, as the valuation date, apparently because this date is when Curtis Bair was allegedly denied the opportunity to have his shares redeemed, in violation of the stock buy-out agreement at issue in count one of the amended complaint.  Plaintiffs acknowledge, however, that should they prevail on this claim, their measure of damages is measured by the terms of the alleged contract – i.e., they would be "entitled to the $203,000 based upon the oral contract theory." (Doc. No. 116, at 11-12.)

[3]  The Court notes that the company and its restaurant were in their early stages when this litigation commenced, and Smeltzer utilized that data which was available to him in order to perform his analysis.  In some instances, it is easy to identify a specific valuation date based upon when the corporate action giving rise to a plaintiff's claim occurred, for example as in the context of a corporate merger.  Here, pinpointing a precise date for valuation is made difficult because there is a factual dispute as to whether a freeze-out occurred, much less as to when it occurred.  Assuming that December 2003 would have been the most appropriate valuation date, and given that Smeltzer's report includes data from 2003 and reflects his familiarity with the same, it would appear that Smeltzer could discuss whether and to what extent his conclusions regarding the fair market value of the stock would have differed using December 2003 as his valuation time frame.

**B.     Defendants' time keeping and scheduling records**

Plaintiffs have requested the exclusion of certain business records on hearsay grounds, arguing that the business records exception found in Federal Rule of Evidence 803(6) does not apply because the company did not regularly maintain its records and that the circumstances surrounding the records indicate a lack of trustworthiness.  Plaintiffs also complain that, despite a confidentiality agreement between the parties, Defendants have liberally redacted the documents, thereby limiting the Plaintiffs' ability to meaningfully evaluate the documents' import.  By way of relief, Plaintiffs request that the Court restrict or deny Defendants' use of the redacted version of these records until the complete records are produced and reviewed by Plaintiffs.

In their brief in opposition to the motion, Defendants represent that they produced those business records (or portions thereof) responsive to Plaintiffs' requests, and that Plaintiffs' allegations of incompleteness are, at this time, insufficient to preclude their admissibility.  Additionally, in their brief and during oral argument, Defendants indicated that they would provide Plaintiffs unredacted copies of the business records at issue.

The Court had the opportunity to review the heavily redacted versions of the business records, and questions whether Defendants would be able to lay a foundation for their admissibility under Rule 803 in their current form.  However, in light of Defendants' representations that they will be providing Plaintiffs the unredacted versions, the Court will afford Defendants the opportunity to lay an adequate foundation for the admissibility of these records during trial.  In the event that Plaintiffs have not been provided the unredacted versions of these records in a timely manner, however, Plaintiffs may renew their objections to the

admissibility of this evidence prior to the commencement of trial.

    **C.**    **Corporate bylaws**

Plaintiffs object to an exhibit that Defendants have marked as the company's corporate bylaws because they fail to include certain pages containing "optional" stock transfer restriction provisions that were inserted into the minute book. Plaintiffs maintain that the optional provisions were adopted by the corporation when the corporation inserted them into its official corporate records. (Doc. No. 101, at 11) ("By utilizing this form of bylaws, the Defendant Company adopted and incorporated the optional 6.06 provisions restricting the transferability of shares, rendering the bylaws ambiguous."). Defendants counter that the optional stock transfer restrictions have always been, and continue to be, "optional," in spite of ledgering on certain shares of stock referring to transfer "terms and conditions" found in the bylaws. (Doc. No. 107, at 9-10) ("Although the entire kit was placed into the corporate book, there was no action by the company that explicitly adopted these optional stock transfer provisions. Because the entire section that plaintiffs refer to is labeled as optional, absent any proof to the contrary, the bylaws, marked as Exhibit X, are a complete and accurate reproduction of the ABC corporate books.").

The Court notes that it has yet to be presented with a continuous copy of the corporate records showing, in context, both the standard and the "optional" provisions of the bylaws. Although the Court recognizes that the parties dispute which provisions of the bylaws were and were not adopted by the corporation, the Court concludes that the exhibit to be used in trial should be a reproduction of the pages that were inserted into the corporation's official record book, which the parties agree would include both the standard and "optional" provisions as they appear in context. Thus, to the extend that Defendants offer an incomplete copy of the corporate

records, Plaintiffs' objection is sustained and Plaintiffs' motion in limine is granted.

## II.     DEFENDANTS' MOTIONS IN LIMINE (Doc. Nos. 98-100)

### A.     Testimony of Patrice Bair with respect to count one of the amended complaint (breach of stock buy-out agreement) (Doc. No. 98)

Defendants have moved to preclude Patrice Bair's testimony as it relates to Francis Purcell's and/or the company's breach of the stock buy-out agreement. Defendants advance two grounds on which Patrice Bair's testimony on count one should be precluded: (1) they assert that she does not have standing to raise a breach of contract claim relating to the buy-out; and (2) they allege that the discovery conducted has failed to yield evidence establishing that Patrice Bair has personal knowledge of any facts relating to count one.

With respect to Defendants' contention that Patrice Bair is not a proper plaintiff for count one, a motion in limine is not an appropriate vehicle to mount this substantive argument. Defendants had the opportunity to challenge Patrice Bair's ability to state a claim for breach of the alleged buy-out agreement in their motion for summary judgment, and they will have the opportunity to do so in a properly raised motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. Thus, the Court will not engage in a discussion of Defendants' "standing" argument at this time.

With respect to Defendants' second argument, it is generally true that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. Here, however, Plaintiffs represent that Patrice Bair does have personal knowledge of facts and of party-opponent admissions relevant to the claim that Francis Purcell and/or the company breached the stock buy-out agreement at issue in count one. (See, e.g., Doc. No. 110, at 10) ("Being present when

Francis Purcell made certain representations and statements is an adequate foundation to testify concerning those representations and statements if they are . . . relevant in the present case."). Thus, the Court concludes that any questions as to the sufficiency of Patrice Bair's personal knowledge or lack thereof – generally and with respect to testimony relating to count one – are more appropriately resolved at trial.[4]

### B. Expert testimony of Jon S. Gencavage and Albert H. Lyter, III (Doc. No. 99)

Defendants contend that Plaintiffs should be precluded from calling experts Gencavage and Lyter, who are document and ink analysts. First, Defendants complain that Plaintiffs' expert

---

[4] In the motion in limine, Defendants also object to Patrice Bair's testimony on the grounds that it is "hearsay, speculative, or simply irrelevant . . . [and] duplicative of the testimony of Plaintiff Curtis Bair." (Doc. No. 102, at 9.) These objections are likewise better suited for resolution at trial.

disclosures failed to comport with Federal Rule of Civil Procedure 26(a)(2)(B),[5] in that Plaintiffs failed to provide the experts' qualifications, compensation, publications, and prior testimony. (Doc. No. 103, at 7.)  Plaintiffs represent – and Defendants do not dispute – that Plaintiffs disclosed the above-mentioned information in 2005.  (Doc. No. 109, at 9); (see also Doc. Nos. 109-2, 109-3, 109-4) (correspondence between the parties regarding Plaintiffs' experts). Because Defendants have known the details of Plaintiffs' experts' qualifications, compensation, publications, and prior testimony for over two years, the Court concludes that any delay in the disclosure of this information was harmless.  See Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information or witness . . . unless the failure . . . is harmless."); Fitz, Inc. v. Ralph Wilson Plastics, Co., 184 F.R.D. 532, 536 (D.N.J. 1999) ("Failure to comply with Rule 26 regarding

---

[5]  This provision provides:

> (B) Written Report.  Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report — prepared and signed by the witness — if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.  The report must contain:
> (i)    a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii)   the data or other information considered by the witness in forming them;
> (iii)  any exhibits that will be used to summarize or support them;
> (iv)   the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v)    a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi)   a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

expert witnesses is . . . harmless when there is no prejudice to the party entitled to disclosure.") (internal citations and quotation marks omitted). Accordingly, the Court finds that exclusion of the experts based upon Rule 26 is inappropriate.

Defendants next argue that the experts' testimony is not relevant and will not assist the trier of fact to understand the evidence, and that the probative value of the experts' testimony would be outweighed by its prejudice to the Defendants. (Doc. No. 99.) The Court will address these arguments as to Gencavage and Lyter, in turn.

### 1. *Testimony by Jon S. Gencavage*

Mr. Gencavage proposes to testify that certain documents, in particular the shareholder ledger and a stock certificate issued to Jessica Kiely, were altered to reflect a stock transfer date of December 31, 2002, instead of December 31, 2001.[6] According to Plaintiffs, the date change is relevant because in 2001 the Purcells were party to a shareholder agreement that restricted the stock transfer at issue. Plaintiffs intend to use the improper transfer of the stock and subsequent alteration of the corporate records to conceal the transaction to further develop their argument that the Purcells disregarded the corporate formalities, exercised total control over the corporation, and used that control to squeeze Curtis Bair out of the company. (See Doc. No. 109, at 11) (stating that this evidence is relevant to the breach of fiduciary duties/oppression claim as well as Plaintiffs' effort to pierce the corporate veil to hold Francis Purcell individually liable).

The Court agrees that, with the proper foundation, Gencavage's testimony that the

---

[6] As a factual matter, the parties disagree when Jessica Kiely received her first share of Appalachian Baking stock. Plaintiffs maintain that the transfer occurred in 2001, but Defendants assert that she did not become a shareholder until 2002.

corporate records were altered may be relevant to Curtis Bair's claim that the Purcells engaged in oppressive behavior and that he was squeezed out of the corporation as a result; therefore, the Court will not exclude this testimony on the basis of relevance. Nor is it apparent, as Defendants argue, that "the documents, and the amendments thereto, speak for themselves," such that the testimony will not aid the factfinder. (Doc. No. 103, at 10.) The Court has reviewed photocopies of the documents at issue and concludes that with certain entries it is not readily apparent what number or letter was overwritten. (See, e.g. 43-55, at 2) (shareholder ledger). Additionally, Francis Purcell indicated that, at least with respect to the stock certificate, he was unable to determine "what was originally typed." (Doc. No. 109, at 12-13); (see also Doc. No. 109-5, at 4-5) (Francis Purcell's deposition testimony). Thus, the Court is not persuaded that "the documents speak for themselves" or that an expert would be of no assistance to the factfinder. The motion in limine as to Mr. Gencavage will be denied.

### 1.   *Testimony by Dr. Lyter*

Defendants raise similar arguments that Dr. Lyter's opinion is neither relevant nor helpful to the jury's understanding of the issues, and that it would cause undue prejudice to Defendants. If permitted to testify, Dr. Lyter will explain that entries were added to exhibit A-1 after its initial drafting. (Doc. No. 99, at 15-16) (highlighting the added entries). Unfortunately, neither party explains to the Court what exhibit A-1 is or who prepared it. Because of this lack of information, the Court is unable to assess how Dr. Lyter's findings regarding exhibit A-1 are potentially relevant to the remaining claims.

Dr. Lyter's expert report also contains an analysis and discussion of the shareholders agreement contained in the corporate record books. (Doc. No. 99, at 15.) Certain of Dr. Lyter's

observations are readily apparent to a layperson: for example, on page one of the agreement there is a word processing stamp in the upper left corner,[7] and on the final page, numbered 16 and titled "Exhibit A," the page number differs in format from the other page numbers in the document.[8]  (Id.); (see also Doc. No. 43-27).  Dr. Lyter explains that the fluorescence characteristics of page 16 differ from the other pages, notes that page 16 contains impressions of the signatures from the signature page (page 14), and observes that page 16 has three to four fewer sets of staple holes than pages 1-14.[9]  (Doc. No. 99, at 15.)  Ink dating and other analysis of the handwritten entries were inconclusive.  (Id.)  Based upon his observations and scientific analyses, Dr. Lyter concluded the following: (1) that the shareholders agreement initially consisted of a fourteen-page document without any handwriting on the signature page (page 14); (2) that at least three staples were removed from the document before page number 16 (Exhibit A) was added; and (3) that the signature page was executed after page number 16 was added.

In response to Defendants' challenge that this testimony is neither relevant nor helpful to the jury, Plaintiffs respond: "Without going over every possible permutation of the inferences

---

[7] Dr. Lyter suggests that this word processing stamp relates to the "date and time of creation or printing of the document," and recommends that this "fact . . . be confirmed by someone familiar with the software and hardware configuration used to prepare the exhibit."  (Doc. No. 99, at 15); (see also id.) (suggesting "that either the first page . . . or first 14 pages of [the exhibit] were created on September 21, 2001.").  Dr. Lyter does not present himself as, nor does the Court understand him to be, qualified as an expert in the generation and significance of that word processing stamp.

[8] Exhibit A is a single, undated page purporting to set forth the allocation of the ownership of the corporation.  The exhibit reflects that Francis and Norma Purcell owned 77 shares, or 100%, of the company, and that the shares were valued at $17,000 as of May 10, 2000.  The document was signed by both Francis and Norma Purcell and witnessed by their daughter.

[9] This observation about the staple holes might be readily apparent to a factfinder reviewing the original documents, as opposed to photocopies of them.

arising from the expert's findings, we respectfully submit that the findings are obviously relevant in a case where the credibility and alteration of documents are the main issues." The Court does not agree with Plaintiffs' contention that the relevance of Dr. Lyter's findings regarding the document's history is readily apparent. The Court, however, is aware that the parties dispute the authenticity of various records maintained by the corporation, and that they disagree as to whether Curtis Bair was ever party to any valid and executed shareholders agreement.[10]

Without the benefit of the testimony and evidence to be introduced at trial, and an understanding of the context in which Plaintiff intends to use Dr. Lyter's testimony, the Court is unable to determine whether the history of the shareholders agreement or exhibit A-1 is, in fact, relevant to the matters to be tried. Accordingly, the Court will reserve ruling on Defendants' motion in limine insofar as it seeks to exclude the testimony of Dr. Lyter.

    **C.**     **Alleged misconduct harming the corporation (Doc. No. 100)**

Defendants contend that Plaintiffs should not be permitted to introduce evidence of misconduct that harmed Appalachian Baking, including the following general areas of testimony:

- That Francis Purcell determined that the company would operate only one restaurant rather than multiple ones.

---

[10] In this case, the parties dispute which version(s) of the shareholders agreement was executed and who was a party to any such agreement. Defendants maintain that the only valid and binding shareholders agreement ever in effect was the agreement contained in the corporate records. (Doc. No. 43-27.) Plaintiffs, however, argue that the "original" shareholders agreement named Curtis Bair as a party (Doc. No. 43-26), and that the shareholders agreement in the corporate records books was conveniently altered to omit him as a party to the agreement (Doc. No. 43-27). Many of the differences between the two versions of the agreement are readily apparent, such as the text of the agreement omitting Curtis Bair as a party and the inclusion of the word processing stamp entry containing the date "9/21/01."

- That Francis Purcell violated the terms of the shareholder's agreement.

- That Francis Purcell acted in a manner inconsistent with the bylaws.

- That Francis Purcell engaged in self-dealing by executing an agreement between the company and CP Consulting, a business entity managed by Francis Purcell;

- That Francis Purcell misappropriated corporate opportunities that the company was entitled to purchase.

Defendants assert that these actions allegedly taken by Francis Purcell harmed the corporation and only "indirectly" harmed the corporation's shareholders, including Curtis Bair. Defendants contend that these allegations may only be raised in a shareholder derivative action brought in the name of the company itself. They further state that these incidents are not relevant to any of the claims, including Curtis Bair's claim that the Purcells breached their fiduciary duties to him. Finally, they contend that evidence of this type, if relevant, is unduly prejudicial.[11]

In response, Plaintiffs object to Defendants' characterization of their claims as seeking to recover for harms suffered only by the corporation, maintaining instead that they are seeking relief for harms suffered by them personally. Essentially, Curtis Bair alleges that Francis Purcell's misconduct directly harmed him by squeezing him out of the corporation.[12] Moreover,

---

[11] The Court's adjudication of this motion in limine is complicated by the fact that Defendants refer very generally to these instances or categories of alleged misconduct and do not meaningfully develop the supposed misconduct or how it may be used at trial.

[12] For example, in the amended complaint, Curtis Bair alleges that the Purcells:

- "den[ied] him the right to participate in the benefits of the company";
- "engaged in a systematic effort to oppress and exclude Curtis Bair . . . from having any meaningful role in the company";
- "engaged in a systematic effort to deny Curtis Bair rights and benefits flowing from his status as a minority shareholder by: refusing and failing to declare a dividend; discharging, in bad faith, Curtis Bair . . . from [his] position[] with the

Plaintiffs counter that the gravamen of their case is oppression of a minority shareholder and that "such conduct by Francis Purcell is clearly admissible and relevant."

      The Court agrees with Plaintiffs that this evidence appears to be relevant to the issues to be tried and is not subject to blanket exclusion *via* a motion in limine. In this case, Curtis Bair claims that the Purcells violated the fiduciary duties they owed to him. Instead of treating him with "utmost good faith and loyalty," Orchard v. Covelli, 590 F. Supp. 1548, 1557 (W.D. Pa. 1984), Curtis Bair alleges that the Purcells used their power in a manner calculated to exclude him – and *only* him – from his "proper share of benefits accruing from the enterprise," Viener v. Jacobs, 834 A.2d 546, 556 (Pa. Super. Ct. 2003). As explained by the District Court for the Western District of Pennsylvania, tactics employed by a majority shareholder to effect an improper "freeze-out" of the minority shareholder include, but are not limited to:

> generally oppressive conduct, the withholding of dividends, restricting or precluding employment in the corporation, paying excessive salaries to majority stockholders, withholding information relating to the operation of the corporation, appropriation of corporate assets, denying dissenting shareholders appraisal rights, failure to hold meetings and excluding the minority from a meaningful role in the corporate decision making.

Orchard, 590 F. Supp. at 1557. The types of evidence generally cited by Defendants appear to fall within the scope of those types of evidence typically considered when evaluating whether a majority shareholder inappropriately acted to "freeze-out" the minority shareholder. See id.; see

---

> company; depriving [him] of his positions of director and secretary of the company; replacing [him] with [their] daughter, Jessica Kiely; . . . undertaking actions and making decisions favoring their daughter, Jessica Kiely, and disfavoring Curtis Bair."

(Doc. No. 4-1, ¶¶ 100-103) (subparagraph designations omitted and capitalization modified).

16

also <u>Viener</u>, 834 A.2d at 556.  Additionally, the Court notes that the types of evidence cited by Defendants also appear relevant to the Court's determination whether to pierce the corporate veil with respect to Francis Purcell on the breach of contract claims.  See <u>Eastern Minerals & Chemicals Co. v. Mahan</u>, 225 F.3d 330, 333 n.7 (3d Cir. 2000) (factors to consider with respect to piercing the veil include: "failure to observe corporate formalities; non-payment of dividends; insolvency of debtor corporation; siphoning the funds from corporation by dominant shareholders; non-functioning of other officers and directors; absence of corporate records; whether the corporation is a mere facade for the operations of a common shareholder or shareholders; and gross undercapitalization").

In their motion in limine, Defendants seem to imply that Curtis Bair's claim for breach of fiduciary duties was not properly brought on his own behalf, but should have been brought derivatively on behalf of the corporation.[13]  However, Plaintiffs assert – and Defendants do not challenge – that the derivative action rule "is not a rule of evidence and does not change or qualify the standard rules covering relevancy and materiality which allow the admissibility of [relevant] evidence."  (Doc. No. 108, at 12).  Thus, Defendants argument seems misplaced in a motion in limine seeking the exclusion of evidence.[14]

---

[13]  For example, Defendants state:  "Because the aforementioned allegations could only have resulted in harm to Appalachian Baking Company, Inc., the allegations can only be asserted in a shareholder derivative action brought in the name of [the company]."  (Doc. No. 100, ¶ 9); (see also <u>id.</u> ¶ 13) ("The aforementioned allegations are not relevant to the instant matter because the allegations pertain to issues not properly raised in this litigation, and are nor probative of the Count III cause of action for breach of fiduciary duty.").

[14]  Also, the Court notes that it is not persuaded by Defendants' argument that the instant suit is, in fact, derivative in nature.  See <u>In re Earned Capital Corp.</u> 331 B.R. 208, at 221-22 (W.D. Pa. 2005) (quoting W. Edward Sell & William H. Clark, Jr., Pennsylvania Business Corporations (1997) § 1782.2) ("[W]here there is a breach of the fiduciary duty which the

---

directors, officers, or majority shareholders owe to a shareholder or the minority shareholders . . . the shareholder injured by such a breach has a direct, personal cause of action."); see also 12B Fletchers Cylopedia of Corporations § 5915 (2000 Revised Volume) (explaining that a shareholder may bring a suit individually for "acts depriving a shareholder or member rights as such, including acts . . . depriving minority shareholders of their right . . . to participate in the affairs of the corporation").

Moreover, even if Curtis Bair's claim that the Purcells breached fiduciary duties owed to him is considered derivative, courts have recognized a close corporation exception to the derivative suit rule and allowed such suits to go forward in reliance on the ALI Principles of Corporate Governance, § 7.01(d). Nelder v. Vaisberg, 427 F. Supp. 2d 563, 570 (E.D. Pa. 2006) (collecting cases and ultimately concluding that,"Section 7.01(d) of the ALI Principles may be applied in appropriate cases in Pennsylvania"); see Warden v. McLelland, 288 F.3d 105 (3d Cir. 2002) (noting that "[t]here are good reasons to believe the Pennsylvania Supreme Court would concur and adopt section 7.01," but declining to resolve the issue until presented in a more appropriate case); see also 12B Fletchers Cylopedia of Corporations § 5911.50 ("Courts sometimes recognize the right of a close corporation shareholder to sue directly, as an individual, on a cause of action which would normally have to be brought derivatively.").

Section 7.01(d) of the ALI Principles provides as follows:

> In the case of a closely held corporation, the court in its discretion may treat an action raising derivative claims as a direct action, exempt it from those restriction sand defenses applicable only to derivative actions, and order an individual recovery, if it finds to do so will not (I) unfairly expose the corporation of the defendants to a multiplicity of actions, (ii) materially prejudice the interests of creditors of the corporation, or (iii) interfere with a fair distribution of the recovery among all interested persons.

Warden, 338 F.3d at 111 (quoting ALI Principles of Corporate Governance § 7.01(d)).

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CURTIS BAIR, et al.,** : | |
| : | |
| **Plaintiffs** : | |
| : | **CIVIL ACTION NO. 1:04-CV-1357** |
| • : | |
| : | **(Chief Judge Kane)** |
| **FRANCIS PURCELL, et al.,** : | |
| : | |
| **Defendants** : | |

**ORDER**

**AND NOW**, this 29th day of January, 2008, upon consideration of the parties' motions in limine, and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** the Plaintiff's motion in limine (Doc. No. 97) is **GRANTED** in part as follows: The parties are directed to use a complete reproduction of the "bylaws" section of the corporate record book as their exhibit during trial. In all other respects, the motion is **DENIED** without prejudice to raise appropriate objections at trial.

**IT IS FURTHER ORDERED THAT** the Court will **RESERVE RULING** on Defendants' motion in limine to preclude Plaintiffs' experts' testimony (Doc. No. 99) insofar as it pertains to the testimony of Dr. Lyter. In all other respects, Defendants' motions in limine (Doc. Nos. 98-100) are **DENIED** without prejudice to raise appropriate objections at trial.

 S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania